IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:   12-24169-CIV-UNGARO/TORRES

GEORGE PINO, Individually,

        Plaintiff,

vs.

THE STATE OF FLORIDA, BY AND THROUGH THE FLORIDA DEPARTMENT OF CORRECTIONS, et al.

        Defendants.
_____/

## MEMORANDUM OF LAW OPPOSING DEFENDANTS' FIRST MOTION TO DISMISS

Plaintiff, GEORGE PINO, files this memorandum of law opposing the Defendants' First Motion to Dismiss Complaint (DE #14) pursuant to Local Rule 7.1 of the Southern District of Florida. In their motion, the Defendants present two arguments as to why they assert that the Plaintiff failed to state a claim on which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

1)    That the Plaintiff's claim under Title II of the Americans with Disabilities Act is, in effect, an uncognizable claim for medical malpractice rather than a claim that the Department of Corrections failed to make reasonable accommodations for the Plaintiff's medical needs; (**Motion to Dismiss ¶¶ 6- 19**) and

2)    That the Plaintiff's claims under 42 U.S.C. § 1983 and the Eighth Amendment fail to allege personal participation or a causal connection between the actions of the Defendants and the deprivation of the Plaintiff's civil rights. (**Motion to Dismiss ¶¶ 26-32**)

1

For the reasons stated below, these arguments must fail.

## INTRODUCTION

The Plaintiff, George Pino, was a prisoner incarcerated at several Florida Department of Corrections facilities between December 2008 and March 2012. Before he was incarcerated, George Pino was disabled by osteoarthritis and degenerative joint disease in both of his hips, as well as flat feet, causing him severe pain while walking and requiring a cane as an aid to his mobility. In June 2009, the Plaintiff underwent surgery to replace his right hip. All consulting doctors employed by the Department of Corrections who actually observed and treated the Plaintiff directed as an accommodation for the Plaintiff's medical conditions that the Plaintiff receive a left hip replacement and be provided with orthotic shoes for his flat feet. Both the Plaintiff and the Department of Corrections doctors put in numerous requests for surgery and orthotics. All of these requests were denied without explanation by "Utilization Management" (UM) or the Physician Advisor Committee (PA), headed by Defendant William Nields and staffed by faceless bureaucrats who had never seen nor talked to the Plaintiff or the Department of Corrections medical employees who treated the Plaintiff about his crippling conditions, and never provided a reasonable accommodation to meet his medical needs.

On December 29, 2011, after years of denying these accommodations without reason, Nields provided a letter to the Chief Health Officer at Everglades Correctional Institute stating that the reason for denial was that the Plaintiff was scheduled to be released in a few months. The letter stated that it was not intended to be placed in his medical record, indicating that the decision to refuse the accommodations that FDOC-employed medical staff all ordered for the Plaintiff was an administrative decision based on expense, and not a decision based on a determination of the Plaintiff's medical needs.

## FACTS

The Plaintiff incorporates by reference all facts alleged within the four corners of his Complaint (DE #1).

## STANDARD OF REVIEW

"Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 131 S.Ct. 1289 (2011). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merit of the plaintiff's case." *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F.Supp.2d 1278, 1285 (S.D. Fla. 2005). On a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). "To survive ... a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Velez-Duenas v. Swacina*, 2012 WL 2775010, ___ F. Supp. 2d ___ (S.D. Fla. May 26, 2012)

### A. COUNT I – AMERICANS WITH DISABILITIES ACT

The Defendant Florida Department of Corrections first argues that the Plaintiff has failed to state a claim for discrimination under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* The Defendant argues through mischaracterization that the Plaintiff is

only concerned with the denial of surgery, and that his claim is really a malpractice action rather than an action alleging that he was denied the benefit of programs, services and activities at institutions operated by the Florida Department of Corrections by reason of his disability.

As alleged in the Complaint, the Plaintiff is a disabled individual with severe osteoarthritis (coxarthrosis) and vascular necrosis in his left hip, as well as a right hip replacement. **Complaint ¶ 10.** State correctional facilities are prohibited from discriminating against individuals with disabilities, as public entities. **Complaint ¶ 13**; see also *Pennsylvania Dept. of Corrections* v. *Yeskey*, 524 U.S. 206, 210 (1998). The Florida Department of Corrections faces serious budgetary constraints and a growing and aging prison population which puts demands on the department's strained financial resources; this interferes with the Department's duty to provide necessary care for its inmates. **Complaint ¶ 15.**

The Plaintiff consulted with medical providers who diagnosed him as requiring orthotic shoes and other auxiliary aids for his mobility, but those requests were denied by FDOC administrators. **Complaint ¶ 23, 24.** Medical professionals treating the Plaintiff noted over the period of time from August 2009 and December 2011 that the Plaintiff's degenerative hip conditions were rapidly worsening, and made requests that the Plaintiff receive surgery and/or orthotic devices, but all of these requests were summarily denied by FDOC administrators. **Complaint ¶ 47.** The Plaintiff was denied any treatment for his disabilities, even though various treatments were recommended as medically necessary by treating staff, including surgery, podiatric care or orthotic shoes. **Complaint ¶ 48.**

The result of these denials was not only continued pain and suffering from his conditions, but the aggravation of his already existing disabilities and additional loss in his range of motion. **Complaint ¶ 51.** Because of his disability and the failure of the FDOC to make reasonable

4

accommodations for his disabilities, the Plaintiff was denied access to programs, services and activities made available to inmates at the institutions where he was incarcerated, "including medical services, *vocational opportunities, educational opportunities and recreational programs.*" **Complaint ¶ 55** (emphasis added).

Title II of the Americans with Disabilities Act directs that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Congress enacted the Americans with Disabilities Act because "historically, society has tended to isolate and segregate individuals with disabilities," and "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Americans with Disabilities Act of 1990, Pub. L. 101-336, § 2. By its own terms, the Americans with Disabilities Act recognizes that discrimination encompasses not just "outright intentional exclusion," but "the discriminatory effects of architectural, transportation and communication barriers." *Id.*

The Defendants cite a number of cases twenty years old or older from other circuits for the proposition that the denial of medical services for treatment of a disability cannot as a matter of law constitute discrimination on the basis of that disability. See **Motion to Dismiss (DE #14) ¶ 11 – 15**, citing *United States v. Univ. Hosp., SUNY – Stony Brook*, 729 F.2d 144 (2d Cir. 1984); *Johnson by Johnson v. Thomson*, 971 F.2d 1487 (10th Cir 1992); *Toney v. U.S.*

*Healthcare, Inc.*, 840 F. Supp. 357 (E.D. Penn. 1993). But even if this handful of cases accurately stated the applicable law[1], the Defendants miss the point: denying **all** meaningful treatments or auxiliary aids which would allow the Plaintiff to move about the correctional institutions where he was housed to the same extent as the average able-bodied inmate, and denying all other reasonable accommodation to allow the Plaintiff the benefit of prison services, isolated and discriminated against the Plaintiff, a clear violation of Title II of the Americans with Disabilities Act.

The Plaintiff has sufficiently and plausibly pleaded that he was denied participation in the services, programs and activities of Florida Department of Corrections prisons because he could not physically access them. Specifically, the Plaintiff has pleaded that he suffered from musculoskeletal impairments in his hips that substantially limited his ability to walk, stand, or even sit for any significant period of time. Many of the cases cited by the Defendants pertain only to medical treatment decisions in a private healthcare context, where there was no allegation that the medical providers also denied the plaintiffs the ability to obtain those treatments elsewhere or to seek second opinions, or that the medical providers denied access to other services by failing to treat the plaintiffs. See *United States v. University Hospital*, 729 F.2d 144 (2d Cir. 1984) (involving the Surgeon General's attempt to intervene in the decision of parents to opt out of aggressive surgical treatment of their infant's spina bifida by doctors at a hospital under the Rehabilitation Act); *Johnson v. Thomson*, 971 F.2d 1487 (10th Cir. 1992) (suit over

---

[1] In more recent cases, the Supreme Court has acknowledged that denial of disability-related medical treatment by prison officials can constitute a violation of the Americans with Disabilities Act.

"In fact, it is quite plausible that the alleged deliberate refusal of prison officials to accommodate Goodman's **disability-related needs** in such fundamentals as mobility, hygiene, **medical care**, and virtually all other prison programs constituted 'exclu[sion] from participation in or ... deni[al of] the benefits of' the prison's 'services, programs, or activities.' 42 U.S.C. § 12132; see also *Yeskey*, 524 U.S. at 210, 118 S.Ct. 1952 (noting that the phrase 'services, programs, or activities' in § 12132 includes recreational, medical, educational, and vocational prison programs)." *United States v. Georgia*, 546 U.S. 151, 157 (2006) (Scalia, J.) (emphasis added).

recommendations by hospital doctors that some infants with spina bifida receive only pain management, while others with spina bifida were recommended to receive surgery and antibiotics); *Toney v. U.S. Healthcare, Inc.*, 840 F. Supp. 357 (E.D. Penn. 1993) (granting summary judgment to defendant physician where undisputed facts showed that physician knowingly treated plaintiff and other patients for HIV and only ceased treatment when plaintiff could not pay).

By contrast, the Plaintiff was a prisoner in state correctional facilities without the ability to choose between healthcare providers or to obtain necessary hip surgery and orthotics on his own, and who relied on the Department for all programs, services and activities; if the Department of Corrections deliberately chose to deny any medical treatment or auxiliary aids to the Plaintiff, he could not simply go to an outside provider for orthotics, or a hip replacement. Instead, the Plaintiff was forced to do without the accommodations which FDOC medical employees all ordered as necessary accommodations for the Plaintiff's disabilities. "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Finally, in citing *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996), the Defendants try, without merit, to re-cast the Plaintiff's case as one for medical malpractice. Malpractice is defined as the "[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services." Black's Law Dictionary (6th ed. 1990). Merely because a wrongful act occurs in a medical setting does not necessarily mean that it involves medical malpractice. *Durden v. American Hosp. Supply Corp.*, 375 So.2d 1096 (Fla. 3d DCA (1979))(complaint grounded in

7

general negligence after finding no medical diagnosis, treatment, or care rendered by blood collection agency to patient who sold his blood), *cert. denied,* 386 So.2d 633 (Fla.1980); *Robinson v. West Florida Regional Medical Ctr.,* 675 So.2d 226 (Fla. 1st DCA 1996). The wrongful act must be directly related to the improper application of medical services, and the use of professional judgment or skill. *Liles v. P.I.A. Medfield, Inc.,* 681 So.2d 711 (Fla. 2d DCA 1995) (general negligence claim allowed where process of complying with statutory requirements did not involve medical skill or judgment).

The Plaintiff has not alleged that the medical professionals who actually spoke with, observed, diagnosed and recommended treatment for the Plaintiff failed to practice their professions with due care and skill; those professionals who actually practiced medicine with regard to the Plaintiff all ordered medical treatment and auxiliary aids as necessary accommodations for the Plaintiff's disabilities.

Instead, Utilization Management and the Physician Advisor Committee, headed by defendant William Nields, consistently overturned the orders of treating physicians and nurses. William Nields never met the Plaintiff or observed his injuries, or practiced medicine with regard to the Plaintiff, or otherwise applied medical skill and judgment. Instead, Nields summarily denied all accommodations which the FDOC doctors consulting with the Plaintiff ordered as necessary for the Plaintiff to have full access to programs and services, without giving any reason why those accommodations were unnecessary or recommending alternative accommodations. William Nields was not acting in the capacity of a physician, but instead that of a manager making business decisions to cut costs.

The letter written by Dr. Nields to Carl Balmir, M.D. illustrates that Nields was acting in the capacity of an administrator concerned with saving money for the Department of Corrections,

8

and not that of a doctor providing medical treatment. Nields concludes his letter by saying that the letter "was not intended to be placed in the inmate's medical record."

This is not a claim for medical malpractice, or a squabble over a particular course of treatment; this is a claim for discrimination under the Americans with Disabilities Act, premised on the fact that the Florida Department of Corrections systematically denied reasonable accommodations which would have allowed the Plaintiff to participate in prison programs, services and activities. The Defendant's argument is without merit and the motion to dismiss Count I should be denied.

### B. DECLARATORY RELIEF

Without conceding the sufficiency of any portion of the complaint, the Plaintiff withdraws his claims for declaratory relief in this action.

### C. COUNT 2 – 42 U.S.C. § 1983 / EIGHTH AND FOURTEENTH AMENDMENTS

There is no cause of action based on *respondeat superior* liability under 42 U.S.C. § 1983. See *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). However, a plaintiff may state a claim against a supervisor for the actions of his subordinates if he establishes a "causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' or when the supervisor's improper 'custom or policy ... resulted in deliberate indifference to constitutional rights' . . . A causal connection can also be established by facts which support an inference that the supervisor

9

directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1234-35 (citations omitted).

The Eleventh Circuit has held that a question of liability of wardens and senior correctional officials for deliberate indifference to serious medical needs may survive when the plaintiff establishes sufficient facts to allow the jury to find a) that the official was aware of serious deficiencies in the provision of medical care and failed to take adequate measures to correct them; b) that a reasonable person would know that such a failure constituted deliberate indifference; and c) that because the official in question was in a position to rectify (or attempt to rectify) problems with the provision of medical care, his failure to do so was "causally related to the violation of [the plaintiff's] eighth amendment rights" . *Greason v. Kemp*, 891 F.2d 829, 840 (11th Cir. 1990) (affirming the denial of summary judgment in Eighth Amendment deliberate indifference to psychiatric needs case where plaintiff presented evidence that wardens and medical directors were aware of overburdened staff psychiatrists and similar previous instances where a psychiatrist had unreasonably discontinued anti-depressants leading to a suicide at the prison). See also *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985) (warden and assistant warden of prison were not entitled to judgment n.o.v. where jury reasonably found that both knew about decedent inmate's inadequate treatment for epilepsy and failed to take corrective measures to ensure that he received proper care even though they had the power to do so).

With regard to Defendants Tucker, Langford and Mayo, the Plaintiff does not allege that each of them personally participated in depriving the Plaintiff of his Eighth Amendment rights. However, the Plaintiff does state a claim by alleging that each of the Defendants is responsible for the deprivation of the Plaintiff's right to be free from cruel or unusual punishments through a causal connection between their actions and the deprivation of the Plaintiff's civil rights.

The Plaintiff alleges that the Defendants were in positions of supervisory authority as the Secretary of the Department of Corrections and as Wardens of Desoto Annex and Everglades Correctional Institution, respectively. **Complaint ¶¶ 6, 7, 8**. The Plaintiff also alleges with particularity that he filed numerous medical grievances regarding his lack of medical treatment. **Complaint ¶¶ 29 – 34**. Although not explicitly stated in the text of the Complaint, Fla. Admin. Code § 33-103.002(15)(b) designates that formal grievances are to be reviewed by the warden of the institution. A jury could therefore reasonably find, and the Plaintiff has plausibly alleged, that the Plaintiff's grievances were reviewed by defendants Langford and Mayo and that they had knowledge of the Plaintiff's need for and lack of medical treatment.

Additionally, all requests for consultation, numerous iterations of which were completed by institutional medical staff at both Desoto Annex and Everglades Correctional Institution, **see Complaint ¶ 23, 25, 27, 36, 38, 40, 42**, are to be submitted to the warden of the institution where the Plaintiff is housed, and the warden "shall provide final approval or disapproval" of such requests. Fla. Admin. Code § 33-401.601(5)(b). Requests which involve treatment outside of the institution are to be forwarded to the Secretary of Corrections (who, at the time, was Kenneth Tucker). Fla. Admin. Code § 33-401.601(6)(a).

As the plaintiff has plainly and plausibly stated that he filed numerous formal grievances and that numerous requests for consultation by medical providers were filed on his behalf by institutional medical staff, and as Florida regulations governing the Department of Corrections state that such grievances and requests for consultations shall be reviewed by the wardens and Secretary of Corrections, the Plaintiff has plausibly alleged that Defendants Tucker, Langford and Mayo were not simply passive supervisors, but were causally connected to the denial of the Plaintiff's constitutional rights because they knew that the Plaintiff was being denied his right to

treatment for serious medical needs and, despite the power to stop that known deprivation, failed to do so. Defendants Tucker, Langford and Mayo's argument for dismissal of Count II against them is therefore without merit.

The Plaintiff has sufficiently stated a cause of action against William Nields for deliberate indifference to the Plaintiff's serious medical needs. Dr. Nields tries to misdirect the Court's attention to a single letter denying a request for orthopedic consultation in the last 90 days of the Plaintiff's sentence, while ignoring other allegations that Nields personally participated in the repeated denial of necessary medical care to the Plaintiff. This grossly mischaracterizes the Plaintiff's complaint, which clearly states that William Nields, the Chairman of the Physician Advisor Committee, made the decision to deny the Plaintiff necessary medical care for his serious medical needs. **Complaint ¶ 9**. The Complaint goes on to specifically name over a half-dozen occasions where "UM" (Utilization Management) or "PA" (the Physician Advisor Committee) denied separate requests for consultation for necessary medical care. **Complaint ¶¶ 23 – 28, 36 – 45**.

Defendant William Nields mentions only the specific allegation that he sent one letter on December 29, 2011 denying a consultation request, and argues that the fact of the letter alone cannot establish a basis for liability for Nields. But Rule 8 requires only notice pleading with enough specific factual allegation to render the claim plausible. At the pleading stage the plaintiff is not required to set forth the level of factual support that he would be required to in order to withstand a motion for summary judgment. The "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 512 (2002) (dismissal of an employment discrimination lawsuit on the basis that it did not contain

specific facts establishing a prima facie case of discrimination was improper because discovery might uncover direct evidence of discrimination). The letter quoted by the Plaintiff in his complaint is only illustrative of the other allegations that Defendant Nields was personally involved in denying medical care to the Plaintiff on many occasions over three years. Dr. Nields was not just one member of the Physician Advisor Committee whose only apparent involvement was one letter written at the end of the Plaintiff's sentence. He was Chairman of the Physician Advisory Committee "and made the decision to deny necessary medical treatment to the plaintiff". **Complaint ¶ 9.**

The Plaintiff has only one letter from William Nields to date, which notably contains a warning to its recipient not to place the letter in the Plaintiff's medical file. **Complaint ¶ 46.** Based on the note not to place a copy of the letter in the Plaintiff's medical file (which is an odd statement to make if, as Defendant Nields maintains, his purpose for sending the letter was to recommend a course of medical treatment to the Plaintiff), there is other information in the possession of the Defendants which the Plaintiff should be allowed to seek in discovery. The pleading phase does not require the Plaintiff to put forth trial-worthy proof; it merely requires that the Plaintiff show by a preliminary factual showing that his claims are "plausible" and that allowing the case to go to discovery and summary judgment phases is not a waste of the court's time. The Plaintiff has done this by alleging Nields's attempt to keep information on the denials out of records where it may be discovered.

The Plaintiff sufficiently alleges that Nields and potentially other UM or PA officials engaged in affirmative acts that denied the Plaintiff of care for his serious medical needs and deprived him of his constitutional rights. The Plaintiff need not spell out in a complaint his entire legal argument or give a detailed recitation of all the facts that support a final judgment in his

favor. It is sufficient that the Plaintiff make a "short and plain" statement of his claim, *Skinner v. Switzer*, 131 S.Ct. 1289 (2011), and that he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Velez-Duenas v. Swacina*, 2012 WL 2775010, ___ F. Supp. 2d ___ (S.D. Fla. May 26, 2012).

Between the allegations that Nields was Chairman of the Physician Advisor Committee, that the Physician Advisor Committee denied the Plaintiff's medical care, and that Nields wrote at least one secretive letter denying medical care to the Plaintiff, the court may draw the reasonable inference that William Nields, M.D. was deliberately indifferent to the serious medical needs of the Plaintiff in violation of his Eighth and Fourteenth Amendment rights. For that reason, Nields's motion to dismiss Count II is without merit and should be denied.

### D. COUNT 3 – SUPERVISORY LIABILITY

The Defendants make the identical argument in regard to Count 3 as Count 2 – that the complaint is void of allegations of personal participation or a causal connection, and alleges only a *respondeat superior* theory of liability. For the reasons already stated in Section C, the Plaintiff has alleged a causal connection between acts of the Defendants and the deprivation of the Plaintiff's civil rights, and the motion to dismiss should be denied.

WHEREFORE the Plaintiff respectfully requests that the Court deny the Defendants' First Motion to Dismiss.

                                                Respectfully submitted,
                                                THE PLAINTIFF

                             by     /s/ Michael O. Colgan
                                     MICHAEL O. COLGAN, ESQUIRE
                                     Florida Bar No. 27625
                                     Katzman, Garfinkel & Berger
                                     300 N. Maitland Ave.
                                     Maitland, FL 32751
                                     Tel: (407) 539-3900

Fax: (407) 539-0211
mcolgan@kgblawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY certify that on the 23rd day of January, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

/s/ Michael O. Colgan
Michael O. Colgan, Esquire
Florida Bar No. 27625
**Katzman Garfinkel & Berger**
300 North Maitland Avenue
Maitland, FL 32751
Phone: (407) 539-3900
Fax: (407) 539-0211
mcolgan@kgblawfirm.com
Attorney for Plaintiff